Gurpreet Kaur, Esq.
Kaur Legal Group, PC
674 County Square Dr, Suite 305
Ventura, CA 93003
Ph. 805-300-9003; Cell 909-997-4570
Fax: 805-716-6100
E-mail: gurpreetkauresq@gmail.com
*Attorney for Petitioner*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PARVEEN SHARMA<br><br>Petitioner,<br>v.<br>Warden of the Desert View Facility; DAVID J. VENTURELLA, Acting Director of Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States<br><br>Respondents. | Civil Action No.<br><br>**VERIFIED PETITION FOR HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner Sharma is a native and citizen of India who has been detained by Respondents after living at liberty in the United States for more than three years under conditions imposed by the Department of Homeland Security ("DHS"). Respondents revoked that previously granted liberty without advance notice, without identifying any violation of his conditions of release, and without providing any individualized pre-deprivation hearing or meaningful opportunity to contest the necessity of detention.

2. Petitioner entered the United States without inspection on December 22, 2022. Shortly after his entry, DHS briefly detained him pursuant to a Form I-200, Warrant for Arrest of Alien. DHS

thereafter exercised its authority to release Petitioner on an Order of Release on Recognizance ("ROR"), subject to Alternatives to Detention ("ATD") supervision and regular reporting to U.S. Immigration and Customs Enforcement ("ICE").

3. For more than three years following that release, Petitioner complied with the conditions imposed upon him. He consistently appeared for his required ICE appointments, complied with ATD supervision, and committed no violations of his release conditions. He has no criminal history. He established family ties in the United States, obtained lawful employment pursuant to employment authorization based on his timely filed asylum application, and remained continuously available to immigration authorities.

4. On September 3, 2026, Petitioner did exactly what DHS had required him to do for years: he appeared for his regularly scheduled ICE appointment. He arrived voluntarily and in compliance with his reporting obligations. Nevertheless, ICE officers immediately detained him.

5. The detention was not precipitated by any violation of Petitioner's conditions of release, failure to report, criminal conduct, or other identified change in his circumstances. Petitioner had received no advance notice that DHS intended to revoke his liberty and had no reason to believe that appearing for his regularly scheduled appointment would result in his incarceration.

6. After he was taken into custody, Petitioner asked ICE officers why he was being detained. No meaningful individualized explanation was provided. Petitioner informed the officers that he had consistently complied with his ICE reporting requirements and presented his valid employment authorization based upon his timely filed asylum application. ICE nevertheless continued his detention without affording him a meaningful opportunity to address or contest the asserted need for confinement.

7. At no point before ICE physically deprived Petitioner of his liberty did Respondents provide notice of any alleged violation, identify any changed circumstance demonstrating that detention

had become necessary, conduct an individualized custody determination, or provide Petitioner an opportunity to present evidence and be heard before a neutral decisionmaker. Petitioner was simply taken from the liberty DHS had previously granted him and placed back into physical confinement.

8. On September 4, 2026, after Petitioner had already been re-detained, DHS served him with a Notice to Appear charging him solely as removable under INA § 212(a)(6)(A)(i). Petitioner has an asylum application pending before the Immigration Court and remains in pre-final-order removal proceedings.

9. Petitioner's re-detention occurs against the backdrop of a significant change in DHS's asserted interpretation of the immigration detention statutes. On July 8, 2025—more than two years after DHS had released Petitioner into the community—DHS issued Interim Guidance asserting that certain noncitizens who entered the United States without inspection are subject to detention under 8 U.S.C. § 1225(b), rather than the discretionary detention framework of 8 U.S.C. § 1226(a).

10. DHS's position is further reflected in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), which Respondents rely upon to treat certain individuals who entered without inspection as subject to mandatory detention under § 1225(b) and outside an Immigration Judge's ordinary § 1226(a) bond jurisdiction.

11. Petitioner disputes Respondents' attempt to subject him to § 1225(b) after DHS previously released him into the United States, permitted him to remain at liberty for more than three years, and required him to comply with continuing supervision and reporting obligations. Petitioner maintains that his detention is governed by § 1226(a), under which detention is discretionary and individualized custody determinations are contemplated.

12. But this Petition presents an additional and independently dispositive constitutional problem. Regardless of Respondents' asserted statutory classification, DHS had already granted

Petitioner physical liberty and maintained him in the community under supervision for more than three years. Respondents then revoked that liberty without advance notice, without identifying any misconduct or changed circumstance requiring immediate confinement, and without providing Petitioner any individualized pre-deprivation process.

13. No exigent circumstance justified dispensing with such process. Petitioner had consistently reported to ICE, complied with ATD supervision, maintained employment and family ties, possessed employment authorization, had no criminal history, and voluntarily presented himself to ICE on September 3, 2026, precisely as instructed.

14. The constitutional deprivation occurred when Respondents terminated Petitioner's previously granted liberty and returned him to physical confinement without constitutionally adequate pre-deprivation process. A later opportunity to seek review of his custody cannot retroactively provide the process that was denied before his liberty was taken.

15. Petitioner therefore seeks habeas relief restoring the liberty Respondents revoked without due process and ordering his immediate release from immigration custody.

## JURISDICTION

16. This action arises under the Constitution of the United States and the INA, 8 U.S.C. § 1101 *et seq.*

17. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

18. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

19. Venue is proper because Petitioner is detained in Desert View Facility, which is within the jurisdiction of this District. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States. *See* 28 U.S.C. § 1391(e).

**PARTIES**

20. Respondent Tonya Andrews is sued in her official capacity as Warden of the Desert View Facility. Respondent Andrews is the physical custodian of Petitioner.

21. Respondent Todd Lyons is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. Respondent Lyons is a legal custodian of Petitioner and has authority to release him.

22. Respondent Markwayne Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security. In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the INA, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Mullin is a legal custodian of Petitioner.

23. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice. In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

**STATEMENT OF FACTS**

24. Petitioner Sharma is a native and citizen of India.

25. Petitioner entered the United States without inspection on December 22, 2022. Shortly after his entry, DHS briefly detained him pursuant to a Form I-200, Warrant for Arrest of Alien.

26. DHS thereafter released Petitioner from physical custody pursuant to an Order of

Release on Recognizance ("ROR"). As conditions of his release, Petitioner was placed under Alternatives to Detention ("ATD") supervision and required to report regularly to ICE.

27. From the time of his release in December 2022 until his re-detention on September 3, 2026, Petitioner complied with the conditions DHS imposed upon him. He consistently appeared for his scheduled ICE appointments and complied with his ATD requirements without violation.

28. Petitioner has no criminal history. During the more than three years that he lived in the community under DHS supervision, he was not arrested for or convicted of any criminal offense.

29. Petitioner established family ties in the United States and remained gainfully employed. He also obtained employment authorization based upon his timely filed asylum application.

30. Throughout this period, Petitioner remained known and available to DHS. His repeated appearances at scheduled ICE appointments demonstrated his continuing compliance with DHS's reporting requirements and his willingness to appear when directed.

31. At no time before September 3, 2026, did DHS advise Petitioner that he had violated a condition of his release or that his continued liberty presented a danger to the community or an unacceptable risk of nonappearance.

32. On July 8, 2025, while Petitioner remained at liberty and in compliance with his supervision requirements, DHS issued Interim Guidance asserting that certain noncitizens who entered the United States without inspection are subject to detention under 8 U.S.C. § 1225(b), rather than § 1226(a).

33. DHS's asserted detention position is also reflected in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025). Respondents rely upon this framework to assert that individuals within the relevant category are subject to detention under § 1225(b) and are not eligible for an Immigration Judge's ordinary bond determination under § 1226(a).

34. On September 3, 2026, Petitioner appeared voluntarily for his regularly scheduled ICE appointment. Petitioner had consistently appeared for his ICE appointments since his release and had no outstanding violation of his supervision conditions.

35. Petitioner arrived at the appointment expecting to comply with the same reporting obligation that he had satisfied for years. He had received no advance notice that ICE intended to take him into custody.

36. Upon Petitioner's appearance, ICE officers detained him. They did not identify any violation of his ATD requirements or reporting obligations, any criminal conduct, or any other individualized factual development that had arisen since DHS released him into the community.

37. After being taken into custody, Petitioner asked ICE officers why he was being detained. The officers did not provide him with a meaningful individualized explanation for the decision to revoke his liberty.

38. Petitioner informed ICE officers that he had complied with his reporting obligations and had consistently appeared for his scheduled appointments. He further informed the officers of his pending asylum matter and presented his employment authorization, which was based upon his timely filed asylum application.

39. Notwithstanding those circumstances, ICE continued Petitioner's detention without providing him a meaningful opportunity to present information, rebut the asserted basis for detention, or demonstrate why continued physical confinement was unnecessary.

40. Before Petitioner was taken into custody, Respondents provided no advance notice that DHS intended to revoke his release. Respondents did not notify Petitioner of any alleged violation of his supervision conditions or any changed circumstance that allegedly justified his immediate detention.

41. Respondents likewise did not provide Petitioner an individualized pre-deprivation hearing before a neutral decisionmaker, an opportunity to present evidence concerning his compliance and ties to the community, or any other meaningful opportunity to contest the necessity of detention before physically depriving him of his liberty.

42. No apparent emergency or exigent circumstance required immediate detention without prior process. Petitioner had complied with DHS supervision for more than three years, consistently appeared when directed, maintained family ties and employment, possessed employment authorization, and had no criminal history. Indeed, Petitioner's presence at the ICE office on September 3, 2026, resulted from his voluntary compliance with DHS's own reporting requirements.

43. On September 4, 2026, one day after Petitioner was taken into custody, DHS served Petitioner with a Notice to Appear charging him solely under INA § 212(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled.

44. Petitioner has an asylum application pending before the Immigration Court and remains in ongoing pre-final-order removal proceedings.

45. Petitioner remains detained notwithstanding his longstanding compliance with DHS supervision, his lack of criminal history, his family and employment ties, and the absence of any identified violation or individualized factual circumstance demonstrating that his detention suddenly became necessary.

46. Respondents now assert detention authority under § 1225(b), rather than § 1226(a), based upon a legal classification adopted after DHS had already released Petitioner and permitted him to remain in the community under supervision for years.

47. Petitioner disputes that statutory classification and maintains that his detention is governed by § 1226(a). Independently, Respondents revoked Petitioner's previously granted physical

liberty without advance notice, an individualized pre-deprivation custody determination, or a meaningful opportunity to be heard before he was returned to physical confinement.

48. Petitioner remains deprived of his physical liberty as a direct result of Respondents' September 3, 2026 decision to re-detain him.

## STATUTORY FRAMEWORK

49. The INA prescribes three basic forms of detention for noncitizens in removal proceedings. First, 8 U.S.C. § 1226(a) authorizes the detention of noncitizens in standard non-expedited removal proceedings before an IJ. *See* 8 U.S.C. § 1226(a); 8 U.S.C. § 1229a. Individuals in section 1226(a) detention are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

50. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under 8 U.S.C. § 1225(b)(2).

51. Finally, the INA also provides for detention of noncitizens who are subject to final orders of removal, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b). The detention provisions at section 1226(a) and 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(c) was most recently amended earlier this year by the Laken Riley Act ("LRA"), Pub. L. No. 119-1, 139 Stat. 3 (2025).

52. Following enactment of the IIRIRA, the EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under

section 1225 and that they were instead detained under section 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In the decades that followed, most noncitizens who entered without inspection—unless they were subject to some other detention authority—received bond hearings. This practice was also consistent with the practice prior to the enactment of the IIRIRA, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that section 1226(a) simply "restates" the detention authority previously found at section 1252(a)).

53. On July 8, 2025, DHS issued a memo to all employees of ICE stating that "[t]his message serves as notice that DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities. DHS has determined that section 235 of the Immigration and Nationality Act (INA) [8 U.S.C. § 1225], rather than section 236 [8 U.S.C. § 1226], is the applicable immigration detention authority for all applicants for admission. The following interim guidance is intended to ensure immediate and consistent application of the Department's legal interpretation while additional operational guidance is developed." The memo further stated DHS' new position with regard to custody determinations as follows:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1) [8 U.S.C. § 1225(a)(1)]. **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) [8 U.S.C. § 1225(b)] and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated. **The only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) [8 U.S.C. § 1226(a)] during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention**

> **under INA § 236(c) [8 U.S.C. § 1226(c)]**.
>
> Moving forward, ICE will not issue Form I-286, Notice of Custody Determination, to applicants for admission because Form I-286 applies by its terms only to custody determinations under INA § 236 and part 236 of Title 8 of the Code of Federal Regulations. With a limited exception for certain habeas petitioners, on which the Office of the Principal Legal Advisor (OPLA) will individually advise, if Enforcement and Removal Operations (ERO) previously conducted a custody determination for an applicant for admission still detained in ICE custody, ERO will affirmatively cancel the Form I-286. *See* https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last accessed October 18, 2025) (emphasis original).

54. As a result, DHS now considers all noncitizens who have entered the United States without inspection and are subject to the grounds of inadmissibility, including long-time U.S. residents, to be subject to mandatory detention under section 1225(b) and ineligible for release on bond. Conversely, according to DHS "[t]he only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) [8 U.S.C. § 1226(a)] during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c) [8 U.S.C. § 1226(c)]." *Id.*

55. Shortly thereafter, the Board of Immigration Appeals ("BIA") issued decisions reflecting the same interpretation. In Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025) and Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), the Board concluded that Immigration Judges lack bond authority over certain noncitizens present in the United States without admission because, in the Board's view, § 1225(b)(2)(A) mandates detention of such "applicants for admission" during removal proceedings.

56. The Ninth Circuit has since confirmed that DHS's detention authority must derive from the statute enacted by Congress and may not be expanded through administrative interpretation. See Rodriguez Vazquez v. Bostock, 3: 25-cv-05240 (9th Cir. July 30, 2026). Rodriguez Vazquez reinforces

that mandatory detention provisions must be applied according to their statutory terms and that DHS may not invoke mandatory detention where Congress has not authorized it.

57. Petitioner Sharma entered the United States on December 22, 2022, without inspection. Shortly after his entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien. DHS thereafter exercised its authority to release Petitioner on an Order of Release on Recognizance ("ROR"), subject to Alternatives to Detention ("ATD") supervision and regular ICE reporting requirements.

58. Following his release, Petitioner remained at liberty in the United States for more than three years under DHS supervision. During that entire period, Petitioner consistently appeared for his required ICE appointments, complied with all ATD requirements, committed no violations of his release conditions, maintained gainful employment pursuant to valid employment authorization based upon his timely filed asylum application, and developed substantial family ties in the United States. Petitioner has no criminal history.

59. On September 3, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment, exactly as DHS had required him to do throughout the preceding years. His appearance itself demonstrated his continuing compliance with the conditions imposed upon his release.

60. Despite Petitioner's longstanding compliance, ICE officers immediately detained him. Petitioner had received no advance notice that DHS intended to revoke his release or return him to physical custody.

61. At the time Petitioner was detained, DHS had not identified any violation of his ATD obligations, any missed ICE appointment, any criminal conduct, any failure to comply with immigration requirements, or any other individualized factual circumstance demonstrating that his continued liberty had suddenly become inappropriate.

62. After being taken into custody, Petitioner asked ICE officers why he was being detained. The officers did not provide him with any meaningful individualized explanation for the decision to revoke his liberty.

63. Petitioner informed ICE officers that he had continuously complied with his reporting obligations and had appeared for every required ICE appointment. He further advised the officers that he had a pending asylum matter and presented his valid employment authorization based upon his timely filed asylum application.

64. ICE nevertheless continued Petitioner's detention without providing him a meaningful opportunity to address or rebut any asserted concern regarding his custody, his compliance history, his pending immigration proceedings, his employment, his family ties, or any other circumstance relevant to whether physical detention was necessary.

65. On September 4, 2026, one day after ICE had already taken Petitioner into custody, DHS served Petitioner with a Notice to Appear charging him solely under INA § 212(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled. Petitioner is now in removal proceedings under INA § 240 and has an asylum application pending before the Immigration Court.

66. Petitioner contends that his present detention is governed by 8 U.S.C. § 1226(a). DHS affirmatively released Petitioner from physical custody, permitted him to reside in the United States under supervision for more than three years, required him to report regularly to ICE, and thereafter placed him in removal proceedings under INA § 240.

67. Section 1226(a) governs the arrest and detention of a noncitizen "pending a decision on whether the alien is to be removed from the United States" and establishes a discretionary custody framework under which DHS may continue detention or release the noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a).

68. Petitioner therefore disputes Respondents' attempt to subject him to mandatory detention under 8 U.S.C. § 1225(b) after DHS had already released him from physical custody, permitted him to establish an extended period of supervised liberty in the United States, and maintained that arrangement for more than three years while he remained fully compliant.

69. Respondents' contrary position arises from DHS's July 8, 2025 Interim Guidance, issued more than two years after Petitioner had been released into the community. Through that guidance, DHS adopted the position that certain noncitizens who entered the United States without inspection remain subject to detention under § 1225(b), notwithstanding their prior release into the United States.

70. Respondents further rely upon *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), to assert that individuals falling within that category remain subject to § 1225(b) and are therefore outside an Immigration Judge's ordinary bond jurisdiction under § 1226(a).

71. Petitioner disputes Respondents' statutory interpretation and their retroactive application of that interpretation to his circumstances. DHS itself removed Petitioner from physical confinement, released him on his own recognizance, imposed continuing supervision requirements, and permitted him to remain at liberty for more than three years before abruptly returning him to custody.

72. The Government may not transform Petitioner's longstanding supervised release into continuous § 1225(b) detention merely by adopting a new legal interpretation years after his release and then use that interpretation to eliminate the individualized custody protections that otherwise accompany detention under § 1226(a).

73. Petitioner's case is materially different from one involving an individual whom DHS continuously detained following arrival. Petitioner had already been released from physical confinement pursuant to an affirmative DHS custody decision and had lived openly in the community

under DHS supervision for more than three years.

74. During that period, Petitioner repeatedly demonstrated his availability to immigration authorities by appearing for every required ICE appointment and complying with ATD supervision. His September 3, 2026 appearance was no different: Petitioner voluntarily presented himself to ICE precisely because DHS had instructed him to do so.

75. Respondents have identified no individualized factual circumstance arising during Petitioner's years of supervised release that rendered continued release inappropriate. They have identified no criminal conduct, no supervision violation, no failure to report, and no other change in Petitioner's circumstances demonstrating that immediate physical confinement had become necessary.

76. Accordingly, Petitioner maintains that Respondents' detention of him is properly governed by § 1226(a), rather than § 1225(b), and that Respondents may not categorically deprive him of the individualized custody framework provided by § 1226(a) solely because DHS subsequently adopted a different interpretation of the detention statutes.

77. Independently, even if Respondents' asserted statutory classification under § 1225(b) were accepted, that classification would not resolve the separate constitutional question presented by this Petition: whether the Government may revoke physical liberty that it previously granted and maintained for more than three years without providing constitutionally adequate pre-deprivation process.

78. Neither *Matter of Q. Li* nor *Matter of Yajure-Hurtado* eliminates the protections of the Due Process Clause. Those administrative decisions address statutory detention authority and Immigration Judge bond jurisdiction; they do not authorize the Government to terminate previously granted physical liberty without constitutionally sufficient procedures.

79. Before September 3, 2026, Petitioner possessed an existing and substantial liberty

interest arising from his actual release from physical confinement and his continued residence in the community subject to DHS supervision.

80. DHS itself created and maintained that state of liberty. DHS released Petitioner on his own recognizance, imposed ATD and reporting requirements, knew where Petitioner was required to report, and permitted that arrangement to continue for more than three years while Petitioner complied with every condition imposed upon him.

81. Once the Government has granted an individual conditional liberty, the Due Process Clause protects against its arbitrary termination. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

82. Due process ordinarily requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner before the Government deprives an individual of a protected liberty interest. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Fuentes v. Shevin*, 407 U.S. 67, 80–82 (1972).

83. Respondents provided Petitioner none of those protections before returning him to physical custody. Petitioner received no advance notice that his release would be revoked, no identification of any alleged violation or changed circumstance, and no meaningful opportunity to present evidence or respond before his liberty was taken.

84. Respondents did not provide Petitioner an individualized pre-deprivation hearing before a neutral decisionmaker. Nor did they afford him an opportunity, before detention, to present his extensive compliance history, lack of criminal record, employment authorization, gainful employment, family ties, pending asylum proceedings, or consistent history of appearing whenever DHS directed him to do so.

85. No exigent circumstance justified dispensing with pre-deprivation process. Petitioner had complied with DHS supervision for more than three years, had no criminal history, had not violated

ATD requirements, had not missed an ICE appointment, and voluntarily appeared at the ICE office on September 3, 2026.

86. Indeed, the circumstances of Petitioner's arrest demonstrate the absence of any apparent need for immediate warrantless revocation of his liberty. Petitioner was already physically present at the ICE office because he had complied with DHS's reporting instructions and remained fully available to immigration authorities.

87. Respondents nevertheless immediately detained Petitioner without first providing him notice of the proposed deprivation, identifying an individualized factual basis establishing why detention was necessary, permitting him a meaningful opportunity to respond, or providing an individualized pre-deprivation custody determination.

88. Petitioner was therefore taken from an existing state of supervised liberty in the community and returned to physical confinement without constitutionally adequate process.

89. The constitutional injury occurred when Respondents terminated Petitioner's previously granted liberty on September 3, 2026, without providing the process constitutionally required before that deprivation occurred.

90. A later custody review, bond proceeding, or other post-deprivation hearing cannot retroactively provide the pre-deprivation process that Respondents denied Petitioner before taking his physical liberty. By the time any such proceeding occurs, the challenged deprivation has already taken place.

91. Accordingly, Petitioner seeks immediate release from Respondents' custody and restoration of the liberty that existed immediately before his September 3, 2026 re-detention.

## <u>CLAIMS FOR RELIEF</u>

## COUNT ONE

**Violation of Petitioner's Procedural Due Process Rights**

92. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

93. The Fifth Amendment provides that no person shall be deprived of liberty without due process of law. U.S. Const. amend. V.

94. Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), courts evaluate procedural due process claims by considering: (1) the private interest affected by the governmental action; (2) the risk of erroneous deprivation through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the Government's interests, including the burdens additional procedures would entail.

95. The private interest at stake here—freedom from physical confinement—is among the most fundamental liberty interests protected by the Constitution.

96. Petitioner possessed an existing and substantial liberty interest arising from DHS's prior decision to release him from physical custody on an Order of Release on Recognizance ("ROR") and permit him to remain in the community subject to Alternatives to Detention ("ATD") supervision and regular ICE reporting requirements.

97. Petitioner entered the United States without inspection on December 22, 2022. Shortly thereafter, DHS briefly detained him pursuant to a Form I-200, Warrant for Arrest of Alien, but affirmatively released him from physical custody on recognizance.

98. For more than three years following that release, Petitioner remained at liberty under DHS supervision and complied with every condition imposed upon him. He consistently appeared for required ICE appointments, complied with ATD requirements without violation, maintained valid employment authorization based upon his timely filed asylum application, remained gainfully

employed, maintained family ties in the United States, and remained continuously available to immigration authorities.

99. Petitioner has no criminal history and, prior to September 3, 2026, had never been advised that he violated any condition of his release, ATD supervision, or ICE reporting obligations.

100. The risk of erroneous deprivation was substantial because Respondents revoked Petitioner's previously granted liberty without advance notice, without identifying any violation or changed circumstance requiring detention, without affording Petitioner a meaningful opportunity to respond, and without providing an individualized pre-deprivation determination before a neutral decisionmaker.

101. Additional procedural safeguards—including advance notice of the proposed deprivation, disclosure of the factual and legal basis for detention, a meaningful opportunity to present evidence and argument, and an individualized pre-deprivation hearing—would have substantially reduced the risk of erroneous deprivation while imposing comparatively modest administrative burdens upon Respondents.

102. On September 3, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment in compliance with the reporting requirements DHS had imposed upon him.

103. Prior to taking Petitioner into custody, Respondents failed to provide.

a. advance notice that DHS intended to revoke his liberty;

b. notice of any alleged violation, changed circumstance, or individualized factual basis for detention;

c. a meaningful opportunity to contest the factual or legal basis for detention;

d. an individualized custody determination; or

e. a pre-deprivation hearing before a neutral decisionmaker.

104. Upon Petitioner's appearance at the ICE office, Respondents immediately detained him.

105. After being taken into custody, Petitioner asked why he was being detained. Respondents did not provide him with a meaningful individualized explanation demonstrating why physical detention had suddenly become necessary.

106. Petitioner informed ICE officers that he had continuously complied with his reporting requirements, had a pending asylum matter, and possessed valid employment authorization based upon his timely filed asylum application. He presented his employment authorization to the officers.

107. Respondents nevertheless detained Petitioner without providing him any meaningful opportunity to explain his circumstances, present evidence concerning his compliance, employment, family ties, pending immigration proceedings, or otherwise contest the proposed deprivation before his liberty was taken.

108. Respondents did not identify any criminal allegation, violation of ATD requirements, missed ICE appointment, violation of another condition of supervision, or other intervening event that justified the sudden termination of Petitioner's previously granted liberty.

109. Nor did Respondents provide Petitioner with any individualized determination, before detention, that he presented a danger to the community, a risk of nonappearance, or any other circumstance requiring immediate physical confinement.

110. Respondents therefore revoked Petitioner's existing liberty without constitutionally adequate notice, without a meaningful opportunity to be heard, and without individualized pre-deprivation process.

111. Under the circumstances alleged here, the Government's interests did not justify dispensing entirely with pre-deprivation process. Petitioner had remained subject to DHS supervision for more than three years, had consistently appeared as directed, had no criminal history, and voluntarily presented himself to ICE on September 3, 2026. Nothing apparent prevented Respondents

from providing meaningful procedures before terminating his liberty.

112. The constitutional violation occurred when Respondents deprived Petitioner of his previously granted physical liberty without providing the process constitutionally required before that deprivation occurred.

113. A later custody review, bond proceeding, or other post-deprivation process cannot retroactively provide the advance notice, meaningful opportunity to respond, and individualized determination that were absent before Petitioner was taken into physical custody.

114. Petitioner's detention therefore violates the Due Process Clause of the Fifth Amendment, and habeas relief restoring Petitioner to the liberty he possessed immediately before his September 3, 2026 detention is warranted.

## COUNT TWO

### Violation of Fifth Amendment Right to Substantive Due Process

115. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

116. The Fifth Amendment provides that no person shall be deprived of liberty without due process of law. U.S. Const. amend. V. Freedom from physical restraint lies at the core of the liberty protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

117. Petitioner entered the United States without inspection on December 22, 2022. Shortly thereafter, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien, but thereafter released him on an Order of Release on Recognizance subject to ATD supervision and regular ICE reporting requirements.

118. For more than three years thereafter, Petitioner remained at liberty in the community under DHS supervision.

119. Throughout that period, Petitioner complied with every condition imposed upon him. He consistently appeared for required ICE appointments, complied with ATD requirements without violation, remained continuously available to immigration authorities, maintained valid employment authorization based upon his timely filed asylum application, remained gainfully employed, maintained family ties in the United States, and has no criminal history.

120. On September 3, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment, as DHS required him to do and as he had consistently done throughout the period of his supervised release.

121. Despite Petitioner's history of compliance and voluntary appearance, ICE officers immediately detained him.

122. Petitioner asked why he was being detained. Respondents did not identify any criminal conduct, violation of ATD requirements, missed ICE appointment, violation of another condition of supervision, or other individualized factual circumstance demonstrating that Petitioner's physical confinement had become necessary.

123. Petitioner informed ICE officers that he had continuously complied with DHS supervision, had a pending asylum matter, and possessed valid employment authorization based upon his timely filed asylum application.

124. Respondents nevertheless continued with Petitioner's detention without identifying any individualized change in his circumstances warranting termination of the liberty DHS had previously granted him.

125. Petitioner's re-detention was not preceded by any identified failure to comply with DHS supervision, criminal conduct, failure to report, or other intervening event demonstrating that continued liberty in the community had become inappropriate.

126. On September 4, 2026, one day after Petitioner had already been re-detained, DHS served him with a Notice to Appear charging him solely under INA § 212(a)(6)(A)(i).

127. Respondents rely upon a categorical interpretation of the immigration detention statutes reflected in DHS's July 8, 2025 Interim Guidance and administrative decisions including *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), notwithstanding DHS's prior release of Petitioner and his subsequent years of demonstrated compliance.

128. Petitioner disputes Respondents' contention that this categorical statutory interpretation permits his present detention under 8 U.S.C. § 1225(b). But even apart from the parties' statutory dispute, civil immigration detention remains constrained by the Due Process Clause. *See Zadvydas*, 533 U.S. at 690.

129. Here, Respondents permitted Petitioner to remain at liberty under DHS supervision for more than three years. During that period, Petitioner repeatedly demonstrated his availability to immigration authorities by complying with reporting requirements and appearing as directed. His voluntary appearance at the September 3, 2026 ICE appointment further demonstrated his continued compliance and availability.

130. Respondents nevertheless terminated Petitioner's physical liberty without identifying any individualized circumstance showing that detention had become necessary to address danger to the community, risk of nonappearance, failure to comply with supervision, or another legitimate custody concern.

131. The Government possesses legitimate interests in ensuring appearance at immigration proceedings and protecting the community. But Respondents identified no individualized facts demonstrating that Petitioner's immediate detention furthered either interest where Petitioner has no

criminal history, complied with DHS supervision for more than three years, consistently appeared as required, and voluntarily presented himself for the ICE appointment at which he was detained.

132. Under these circumstances, terminating Petitioner's established physical liberty solely on the basis of a categorical change in Respondents' asserted interpretation of the governing detention statute, without any identified individualized change in Petitioner's circumstances, is arbitrary and constitutionally impermissible.

133. Respondents' re-detention of Petitioner under these circumstances constitutes an arbitrary deprivation of physical liberty in violation of the substantive component of the Fifth Amendment's Due Process Clause.

134. Petitioner's continued physical confinement perpetuates that unconstitutional deprivation of liberty.

135. Accordingly, Petitioner seeks immediate release from physical custody and restoration of the liberty he possessed immediately before Respondents detained him on September 3, 2026.

**COUNT THREE**

**Violation of the Immigration and Nationality Act**

136. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

137. Petitioner entered the United States without inspection on December 22, 2022. Shortly after entry, DHS briefly detained him pursuant to a Form I-200, Warrant for Arrest of Alien, and thereafter affirmatively released him from physical confinement on an Order of Release on Recognizance subject to ATD supervision and regular ICE reporting requirements.

138. DHS thereafter permitted Petitioner to remain at liberty in the United States for more than three years while subject to continuing supervision.

139. On September 3, 2026, Petitioner appeared voluntarily for his regularly scheduled ICE appointment in full compliance with his reporting obligations and was immediately detained.

140. On September 4, 2026, after Petitioner had already been returned to physical custody, DHS served him with a Notice to Appear charging him solely under INA § 212(a)(6)(A)(i). Petitioner is now in removal proceedings under INA § 240 and has an asylum application pending before the Immigration Court.

141. Respondents contend that Petitioner is subject to detention under 8 U.S.C. § 1225(b) and is therefore outside the ordinary discretionary custody framework of 8 U.S.C. § 1226(a).

142. Respondents rely upon DHS's July 8, 2025 Interim Guidance, together with *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), to support that position.

143. Petitioner disputes Respondents' statutory interpretation and contends that his present detention is governed by 8 U.S.C. § 1226(a), which governs detention pending a decision on whether a noncitizen is to be removed from the United States and provides a discretionary custody framework permitting individualized release determinations.

144. DHS affirmatively released Petitioner from physical custody, placed him under continuing supervision in the community, required him to report regularly to ICE, and permitted that arrangement to continue for more than three years while Petitioner complied with every condition imposed upon him.

145. Neither *Matter of Q. Li* nor *Matter of Yajure-Hurtado* specifically adjudicated the lawfulness of DHS re-detaining an individual situated as Petitioner is here after years of DHS-authorized release on recognizance and full compliance with supervision requirements.

146. Petitioner therefore disputes that Respondents may retroactively characterize him as

continuously subject to mandatory detention under § 1225(b) after DHS affirmatively released him from physical confinement and maintained him in the community under supervision for more than three years.

147. Petitioner further disputes that DHS may rely solely upon a later categorical interpretation of the detention statutes to eliminate the individualized custody framework applicable under § 1226(a), without regard to DHS's prior release decision or Petitioner's subsequent compliance.

148. Respondents have identified no violation of Petitioner's conditions of release, no criminal conduct, no failure to report, and no individualized factual change in circumstances occurring during Petitioner's years of supervised liberty that independently required his return to physical custody.

149. Accordingly, Petitioner contends that his present detention under § 1225(b) is contrary to the statutory detention framework applicable to his circumstances and exceeds Respondents' lawful detention authority.

150. Because Petitioner is detained in violation of the Constitution or laws of the United States, habeas relief is available under 28 U.S.C. § 2241(c)(3).

151. Petitioner therefore seeks immediate release from physical custody and restoration of the supervised liberty he possessed before his September 3, 2026 re-detention.

## PRAYER FOR RELIEF

Wherefore, Petitioner requests this Court to grant the following:

1. Assume jurisdiction over this Petition pursuant to 28 U.S.C. § 2241 and issue a writ of habeas corpus;
2. Declare that Respondents' September 3, 2026 revocation of Petitioner's previously granted liberty, without advance notice, an individualized custody determination, or constitutionally

adequate pre-deprivation process, violated the Due Process Clause of the Fifth Amendment;

3. Declare that Respondents' continued detention of Petitioner under 8 U.S.C. § 1225(b), rather than the discretionary custody framework of 8 U.S.C. § 1226(a), is contrary to the Immigration and Nationality Act and exceeds Respondents' lawful detention authority;
4. To the extent reviewable under the Administrative Procedure Act, declare unlawful and set aside Respondents' challenged custody determination pursuant to 5 U.S.C. § 706(2);
5. Order Respondents to immediately release Petitioner from ICE custody and restore him to the liberty status that existed immediately before his September 3, 2026 re-detention, including release on his prior Order of Release on Recognizance and previously imposed supervision conditions;
6. Enjoin Respondents from continuing to detain Petitioner based upon the challenged September 3, 2026 custody determination;
7. Enjoin Respondents from re-detaining Petitioner based upon the same grounds challenged in this Petition absent constitutionally adequate pre-deprivation procedures and lawful statutory authority;
8. Enjoin Respondents from transferring Petitioner outside the jurisdiction of this Court during the pendency of these proceedings absent prior authorization from this Court;
9. Award Petitioner reasonable attorneys' fees, costs, and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, to the extent permitted by law;
10. Retain jurisdiction as necessary to enforce the Court's orders and ensure Respondents' compliance with the relief granted herein; and
11. Grant such other and further relief as the Court deems just, proper, and equitable.

Respectfully,

*/s/ Gurpreet Kaur*
Gurpreet Kaur, Esq.
Attorney for Petitioner

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner, and I submit this verification on his behalf. Because Petitioner is detained at the Desert View Facility and immediate relief is sought, counsel verifies this petition on his behalf pursuant to 28 U.S.C. § 2242. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 6th day of September, 2026.

*/s/ Gurpreet Kaur*
Gurpreet Kaur, Esq.